UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: _____

| | |
|---|---|
| **TUBE FORGINGS OF AMERICA, INC. and MILLS IRON WORKS, INC.,**<br><br>                       **Plaintiffs,**<br><br>      v.<br><br>**UNITED STATES,**<br><br>                       **Defendant.** | **Court No. 23-00236** |

## COMPLAINT

Plaintiffs, Tube Forgings of America, Inc. ("TFA") and Mills Iron Works, Inc. ("Mills Iron") bring this action through their attorneys and allege as follows:

## CAUSE OF ACTION

1. Pursuant to sections 516A(a)(2)(A)(ii) and 516A(a)(2)(B)(vi) of the Tariff Act of 1930, as amended, (the "Act"), 19 U.S.C. §§ 1516a(a)(2)(A)(ii) and 1516a(a)(2)(B)(vi), TFA and Mills Iron bring this action to contest certain elements of the final determination in the Covered Merchandise Inquiry conducted by U.S. Department of Commerce ("Commerce" or "the Department") concerning the antidumping duty order against Certain Carbon Steel Butt-Weld Pipe Fittings ("CSBWPF") from The People's Republic of China. *See Certain Carbon Steel Butt-Weld Pipe Fittings from The People's Republic of China: Final Determination of Covered Merchandise Inquiry*, 88 Fed. Reg. 69909 (Dep't Commerce Oct. 10, 2023) ("Final Determination") and accompanying Decision Memorandum for the Final Results of the Covered

Merchandise Inquiry – EAPA Inv. 7335: Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China, Sept. 29, 2023 ("*Issues & Decision Memorandum*" or "*IDM*").

## JURISDICTION

2. This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) because it is commenced pursuant to sections 516A(a)(2)(A)(ii) and 516A(a)(2)(B)(vi) of the Tariff Act of 1930, as amended, 19 U.S.C. §§ 1516a(a)(2)(A)(ii) and 1516a(a)(2)(B)(vi), to challenge to the Final Results of a Covered Merchandise Inquiry issued by Commerce.

3. This action is been timely commenced. Commerce mailed notice of the Final Results to TFA and Mills Iron by certified mail dated October 17, 2023. TFA and Mills Iron filed their Summons within 30 days of that date, on November 9, 2023, as required by section 516A(a)(2)(A)(ii) of the Act, 19 U.S.C. § 1516a(a)(2)(A)(ii). This complaint is timely filed with the Court on November 16, 2023 within 30 days of the Summons.

## STANDING

4. TFA has standing as an "interested party" within the meaning of 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(C) because it manufactures carbon steel butt-weld pipe fittings at its facility in Portland, Oregon like the merchandise subject to the Final Determination. TFA was a member of the Petitioner group that filed the petition which resulted in the *CSBWPF from China* Order.

5. Mills Iron has standing as an "interested party" within the meaning of 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(C) because it manufactures carbon steel butt-weld pipe fittings at its facility in Gardena, California like the merchandise subject to the Final Determination. Mills Iron was a member of the Petitioner group that filed the petition which resulted in the *CSBWPF from China* Order.

6. TFA and Mills Iron have standing to bring this action under 28 U.S.C. § 2631(c) because they each participated as domestic interested parties in the contested Covered Merchandise Inquiry concerning the *Certain Carbon Steel Butt-weld Pipe Fittings from China* antidumping duty order and thus were interested parties to the proceeding underlying the contested Final Determination.

## THE ADMINISTRATIVE PROCEEDING BELOW

7. In relevant part, the scope language of the *CSBWPF from China* antidumping duty order describes merchandise subject to the Order as follows:

> The merchandise covered by the *Order* consists of certain carbon steel butt-weld pipe fittings, having an inside diameter of less than 14 inches, imported in either finished or unfinished form. These formed or forged pipe fittings are used to join sections in piping systems where conditions require permanent, welded connections, as distinguished from fittings based on other fastening methods (*e.g.*, threaded, grooved, or bolted fittings).

8. Pursuant to a voluntary remand ordered in *Norca Industrial Company LLC and International Piping & Procurement Group, LP v. United States*, CIT No. 21-00192, U.S. Customs & Border Protection ("CBP") made a Covered Merchandise Inquiry referral to Commerce, which Commerce received on September 6, 2022. On September 26, 2022, Commerce published a notice of initiation in the Federal Register concerning the requested covered merchandise inquiry and invited interested parties to participate in the inquiry. *See Certain Carbon Steel Butt-Weld Pipe Fittings from The People's Republic of China: Notice of Covered Merchandise Referral and Initiation of Covered Merchandise Inquiry*, 87 Fed. Reg. 58310, 58311 (Dep't Commerce Sept. 26, 2022). In response, TFA, Mills Iron, and a third domestic manufacturer jointly submitted their notice of appearance through counsel.

9. As stated in Commerce's Notice of Initiation, CBP's referral described the manufacture of CSBWPF as "typically" comprising three production phases: (1) converting seamless pipe ''into the rough shape of an elbow, tee, reducer, *etc.,* through a cold- or hot-forming (or forging) process;" (2) reforming or sizing the rough fitting so that the fitting will match the pipe it is destined to be welded to; and (3) a finishing process such as ''shot blasting, or other cleaning, machine beveling, boring and tapering, grinding, die stamping, inspection, and painting."

10. As further stated in Commerce's notice, CBP requested that Commerce determine whether: (1) Chinese-origin rough fittings that only underwent the final stage of three production stages (*i.e.,* finishing processes) in Vietnam are within the scope of the Order*;* and (2) whether Chinese-origin rough fittings that underwent both the second and third stages of production in Vietnam are within the scope of the Order.

11. On October 24 and 26, 2022, the importers of the CSBWPF subject to the covered merchandise inquiry, Norca and IPPG, responded to Commerce's notice. Norca contended that the first "stage" in manufacturing CSBWPF involves "transforming seamless carbon steel pipe into a rough shape of an elbow or tee through a cold- or hot-forming process. After the first production stage, the fittings are considered to be in a rough, 'as formed' state. In other words, that 'rough fittings' are the result of the first production stage." Norca then argued that "A 'rough' CSBW pipe fitting . . . is neither an 'unfinished' nor a 'finished' CSBW pipe fitting covered by the *Order*." IPPG submitted substantively similar comments on October 26, 2022.

12. TFA, Mills Iron, and a third U.S. manufacturer of CSBWPF, Hackney-Ladish, Inc., also responded to the notice on October 26, 2022, stating, *inter alia*, "On its face, the *China Order* applies to any item that has been sufficiently formed as to be dedicated to ultimate use as a

4

butt-weld pipe fitting. The degree of processing to which an item has been subjected is irrelevant once the initial forming process that dedicates it to use as a butt-weld pipe fitting has been performed. … {T}he term 'unfinished form' embraces 'rough' or 'as-formed' pipe fittings."

13. All parties submitted rebuttal comments on November 7 and 9, 2022.

14. On January 24, 2023 Commerce postponed its Final Determination until June 23, 2023.

15. On January 25, 2023, Commerce issued a Request for Additional Information in which it asked interested parties whether (a) the product produced in Vietnam fell into the same class or kind of merchandise as the product produced in China and (b) the finishing processes in Vietnam changed the important qualities or use of the Chinese-origin unfinished fittings that have undergone both forming and resizing and/or heat treatment.  Commerce also asked the parties to compare (a) the sophistication of the production processes performed in China to the sophistication of the production processes performed in Vietnam, (b) the cost or value added by production processes performed in China to the cost or value added by production processes performed in Vietnam, and (c) the level of investment in China to the level of investment in Vietnam.  Commerce also asked the parties to identify both the essential characteristics of butt-weld pipe fittings and the stage of the production process at which the essential characteristics were conferred.  Commerce further asked whether a "rough" butt-weld pipe fitting that had undergone only the forming/forging process could be used for any other purpose.  Finally, Commerce asked the parties to identify the value added at each stage of the production process.

16. Norca and IPPG soon engaged in a series of four last-minute requests repeatedly asking Commerce to postpone the due date for responding to the questionnaire (or to relieve

5

them from responding altogether). The effect of these was to delay the responses from February 8, 2023 to February 28, 2023.

17. TFA, Mills Iron (and Hackney-Ladish) responded to Commerce's questionnaire on February 28, 2023. This response provided evidence establishing, *inter alia*, that: the product produced in Vietnam fell into the same class or kind of merchandise as the product produced in China; the finishing processes in Vietnam do not change the important qualities or use of the Chinese-origin fittings; the sophistication of the production processes performed in China is significantly greater than the sophistication of production processes performed in Vietnam; the costs of or value added by production processes performed in China are substantially higher than the costs of or value added by production processes performed in Vietnam; the level of investment in China is substantially higher than the level of investment in Vietnam; the essential characteristics of butt-weld pipe fittings are imparted by the process of forming pipe or other raw material into the rough shape of a pipe fitting and the essential characteristics are not changed by finishing operations performed in Vietnam; and a butt-weld pipe fitting that had undergone only the forming/forging process cannot be used for any other purpose. Finally, TFA, Mills Iron (and Hackney-Ladish) identified the value added at each stage of their production of CSBWPF, and explained that because the production process for butt-weld pipe fittings is the same world-wide the relative values of those production steps would be the same for Chinese and Vietnamese producers even if actual costs might be different.

18. TFA, Mills Iron, and Hackney-Ladish's response included Declarations under Penalty of Perjury from executives of all three manufacturers testifying to the fact that the terms "roughs," "as formed fittings," and "unfinished" fittings historically had been and continued to be used interchangeably to refer any product that had been at least formed or forged into the

rough shape of a pipe fitting but had not been completed into a finished pipe fitting and, further, that the essential characteristics of CSBWPF are conferred by the process of forming raw material (in most cases, pipe) into the rough shape of a pipe fitting because the resulting product has no useful purpose other than to be finished into CSBWPF.  Also included were source documents and memoranda from the administrative record of the CSBWPF from China antidumping duty investigation documenting Petitioners' intent that all unfinished CSBWPF should be covered by the investigation and resulting antidumping duty order.

19. Norca/IPPG's response to Commerce's questionnaire asserted that the essential characteristics of CSBWPF are imparted by the final finishing steps, specifically beveling and painting, although they conceded that "The rough fitting that results from the first stage of the production process cannot be used for purposes other than to be an unfinished or finished butt-weld pipe fitting."

20. All parties submitted rebuttal comments on March 17, 2023.

21. Commerce published its Preliminary Determination in the Covered Merchandise Inquiry on June 23, 2023, 88 Fed. Reg. 41075.  Among other things, Commerce concluded that "rough fittings do not constitute unfinished fittings and are, therefore, not subject to the *Order* when they are exported from China to Vietnam."  In that context, Commerce "note{d} that parties to this proceeding have at times conflated the terms "rough" and "unfinished" in ways that potentially introduce confusion to the issues before us in this inquiry." Thus, Commerce preliminarily determined that "While we agree with the petitioners that the scope covers all unfinished butt-weld pipe fittings, as well as finished products, we disagree for this preliminary determination that the Petition intended to cover rough fittings that have only undergone stage one of processing, *i.e.*, conversion of seamless pipe into the rough shape of a fitting."

22.     TFA, Mills Iron, and Hackney-Ladish submitted a Case Brief on June 28, 2023 in which they argued that the preliminary determination: (a) contravened the guidance of the U.S. Court of Appeals in *Duferco Steel, Inc. v. United States*, 296 F.3d 1087(Fed. Cir. 2002) and similar decisions by ignoring the explicit and unambiguous scope language of the *CSBWPF from China Order*, substituting language not in the Order, and endeavoring to interpret the substitute language; (b) improperly referred to the factors set forth in 19 C.F.R. § 351.225(k)(1); (c) misinterpreted prior administrative determinations that found CSBWPF produced in third countries from Chinese-origin "rough" pipe fittings to be subject to the *CSBWPF from China Order*; (d) failed to consider record evidence detracting from a conclusion that the terms "rough fittings" and "unfinished fittings" are separate and distinct; and (e) failed to consider record evidence that "rough fittings" are "unfinished fittings" because they can be used only to be finished into CSBWPF.

23.     On June 22, 2023, Commerce extended the deadline for issuing its Final Determination by 42 days, to August 4, 2023.  On August 4, 2023, Commerce extended the deadline to August 18, 2023.  On August 17, 2023, Commerce again extended the deadline, to September 15, 2023. On September 15, 2023, Commerce once again extended the deadline, to September 22, 2023.  On September 22, 2023, Commerce yet again extended the deadline, to September 29, 2023.

24.     On September 15, 2023, Commerce placed a copy of its Preliminary Scope Determination in Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China on the record of the CSBWPF Covered Merchandise Inquiry, stating that "interested parties may submit comments on this information no later than September 19, 2023."

All parties did so accordingly. Despite having solicited comments, Commerce then rejected the submissions from all parties on the grounds that they did not contain "new factual information."

25. Commerce published its Final Determination on October 10, 2023, 88 Fed. Reg. 69909. The Final Determination eviscerates the remedial effect of the antidumping duty order and draws a roadmap for any party seeking to source butt-weld pipe fittings from China without incurring liability for antidumping duties.

26. Commerce's Final Determination dismissed record evidence showing that the usual and common practice in the industry is to use the terms "rough" fitting, "as formed" fitting, and "unfinished" fitting interchangeably, stating, that "this fact merely underscores that there may have been some confusion concerning these terms." After baselessly dismissing longstanding industry practice as "confusion," Commerce "disagree{d} that rough fittings are a form of unfinished butt-weld pipe fitting." Rather than apply the plain language of the Antidumping Duty Order, Commerce asserted that the scope of the Order did not define the unambiguous term butt-weld pipe fitting "in unfinished form." Commerce substituted its own definitions of "rough" and "unfinished" fittings "for clarity" and then proceeded to "interpret" its definitions to conclude that a "rough" fitting – which the administrative record established conclusively has no purpose other than to produce a finished butt-weld pipe fitting – was not a butt-weld pipe fitting in unfinished form. Despite uncontroverted evidence that that a "rough" fitting has no purpose other than to produce a finished butt-weld pipe fitting Commerce also concluded that the essential characteristics of a butt-weld pipe fitting are not imparted by the forming or forging process.

27. Commerce's Final Determination also dismissed the probative value of an internal Commerce Department memorandum from the record of original antidumping duty

investigation, falsely asserting that "the petitioners provided only an excerpt from the 'corroborating' memorandum in their submission." That assertion was based purely on speculation stemming from the "abrupt end" of the memorandum. In the related footnote Commerce stated, "{I}t is unclear whether the record only contains page one of a multi-page memorandum or if the memorandum only consisted of this single page." In fact, the memorandum in question comprises only the single page.

## FIRST COUNT

28. The allegations of paragraphs 1-27 are incorporated by reference and restated as if fully set forth herein.

29. It is a well-settled precept of U.S. antidumping law that the class or kind of merchandise covered by a final antidumping order is determined by the language of the order itself. A predicate for Commerce to the interpret the scope of an order is language in the order that is subject to interpretation. The scope language of the *CSBWPF from China Order* is plain on its face in that it applies unambiguously to pipe fittings "in finished and unfinished form." Not content to accept the *CSBWPF from China* Order's unambiguous language, Commerce parsed the term, "unfinished form," to create subcategories of pipe fittings in unfinished form. It then interpreted these subcategories to exclude certain pipe fittings in unfinished form, thereby eviscerating the remedial effect of the Order. The Final Covered Merchandise Determination is therefore unlawful.

## SECOND COUNT

30. The allegations of paragraphs 1-29 are incorporated by reference and restated as if fully set forth herein.

31. The *CSBWPF from China* Order lacks language that is subject to interpretation. Commerce nevertheless employed interpretive sources described in 19 CFR § 351.225(k)(1) to "establish when in the production process a fitting becomes an unfinished fitting." It was improper for the Department to employ any interpretive sources described in 19 CFR § 351.225(k)(1) to interpret the plain language of the *China Order*. The Final Covered Merchandise Determination is therefore unlawful.

### THIRD COUNT

32. The allegations of paragraphs 1-31 are incorporated by reference and restated as if fully set forth herein.

33. Commerce dismissed as "confusion" record evidence documenting the butt-weld pipe fittings industry's longstanding use of such interchangeable terms as "rough" fittings, "as formed" fittings, and "unfinished" fittings all to refer to butt-weld pipe fittings in unfinished form. To the contrary, record evidence demonstrates that the butt-weld pipe fittings industry does not distinguish among pipe fittings in various degrees of unfinished form. Commerce's finding that the terms "rough fitting" and "unfinished fitting" are distinct and separate is unsupported by record evidence.

34. Commerce dismissed the probative value of an internal Commerce Department memorandum from the original antidumping duty investigation, asserting that "the petitioners provided only an excerpt from the 'corroborating' memorandum in their submission." That assertion is false and is based purely on speculation.

35. For the forgoing and other reasons, the Final Covered Merchandise Determination is unsupported by substantial evidence on the administrative record taken as a whole.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs Tube Forgings of America, Inc. and Mills Iron Works, Inc. respectfully request this Court to enter judgment (1) sustaining plaintiffs' complaint in its entirety; (2) remanding this matter to Commerce with instructions to recognize pipe fittings that have undergone only the first step in the production process in China and the remaining production steps in Vietnam as pipe fittings from China; and (3) providing such other additional relief as this Court may deem just and proper.

        Respectfully submitted,

        /s/ *Lawrence J. Bogard*
        _____

        Lawrence J. Bogard
        John B. Totaro, Jr.
        Neville Peterson LLP
        1310 L Street. N.W.
        Suite 300
        Washington, D.C.  20005
        (202) 776-1150
        (301) 651-4040

        Attorneys for Plaintiffs

November 16, 2023