**Slip Op. 26-83**

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| TUBE FORGINGS OF AMERICA, INC. AND MILLS IRON WORKS, INC.,<br><br> Consolidated Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br> Defendant,<br><br>and<br><br>NORCA INDUSTRIAL COMPANY, LLC AND INTERNATIONAL PIPING & PROCUREMENT GROUP, LP,<br><br> Consolidated Defendant-Intervenors. | Before: Jennifer Choe-Groves, Judge<br><br>Consol. Court No. 23-00231 |

## OPINION AND ORDER

[Sustaining the U.S. Department of Commerce's final results of redetermination pursuant to the second remand order in the final scope ruling in a covered merchandise referral regarding certain carbon steel butt-weld pipe fittings.]

Dated:  July 29, 2026

Lawrence J. Bogard and John B. Totaro, Jr., Neville Peterson, LLP, of Washington, D.C., for Consolidated Plaintiffs Tube Forgings of America, Inc. and Mills Iron Works, Inc.

Tara K. Hogan, Assistant Director, Brett A. Shumate, Assistant Attorney General, and Patricia M. McCarthy, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  Of counsel on the brief was Jack Dunkelman, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Jeremy W. Dutra, Squire Patton Boggs (U.S.) LLP, of Washington, D.C., for Consolidated Defendant-Intervenors Norca Industrial Company, LLC and International Piping & Procurement Group, LP.

Matthew J. McConkey, Mayer Brown LLP, of Washington, D.C., for Amicus Curiae Weldbend Corporation.

Choe-Groves, Judge:  This case concerns the final covered merchandise referral determination by the U.S. Department of Commerce ("Commerce") regarding carbon steel butt-weld pipe fittings.  See Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China ("Final Determination"), 88 Fed. Reg. 69,909 (Dep't of Commerce Oct. 10, 2023) (final determination of covered merchandise inquiry) and accompanying Decision Memorandum for the Final Results of Covered Merchandise Inquiry ("Final IDM"), PR 83;[1] see also Antidumping Duty Order and Amendment to the Final Determination of Sales at Less Than Fair Value; Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China ("Order"), 57 Fed. Reg. 29,702 (Dep't of Commerce July 6, 1992).

---

[1] Citations to the administrative record reflect the public record ("PR"), remand public record ("RPR"), and second remand public record ("SRPR"), ECF Nos. 36, 63, 79.

Consol. Court No. 23-00231                                                    Page 3

Before the Court are Commerce's Final Results of Redetermination Pursuant

to Court Remand ("Second Remand Redetermination"), ECF No. 72-1.  Commerce

determined on second remand that certain carbon steel butt-weld pipe fittings

produced in the People's Republic of China ("China") that underwent

sizing/reforming or heat- or cold-treating and finishing in the Socialist Republic of

Vietnam ("Vietnam") were subject to the scope of the antidumping Order on

carbon steel butt-weld pipe fittings from China.  See Second Remand

Redetermination; Final Determination.  The Court notes that no party filed

comments opposing the Second Remand Redetermination.  Consolidated Plaintiffs

Tube Forgings of America, Inc. and Mills Iron Works, Inc. and Defendant United

States filed comments in support of the Second Remand Redetermination.  See

Mem. Consol. Pls.' Tube Forgings Am., Inc. Mills Iron Works, Inc. Supp. Second

Redetermination Remand, ECF No. 76; Def.'s Resp. Supp. Second Remand

Redetermination, ECF No. 77.  The Court grants Weldbend Corporation's Motion

for Leave of Weldbend Corporation to File Comments as an Amicus Curiae in

Support of the Second Remand Redetermination, ECF No. 78.

For the following reasons, the Court sustains the Second Remand

Redetermination.

Consol. Court No. 23-00231                                    Page 4

## BACKGROUND

The Court presumes familiarity with the underlying facts and procedural history of this case.  See Tube Forgings of Am., Inc. v. United States ("Tube Forgings I"), 49 CIT __, 750 F. Supp. 3d 1364 (2025); Tube Forgings of Am., Inc. v. United States ("Tube Forgings II"), 49 CIT __, 813 F. Supp. 3d 1304 (2025).

U.S. Customs and Border Protection ("Customs") submitted a covered merchandise referral to Commerce on September 6, 2022, requesting a determination whether merchandise described in the referral were within the scope of the Order.  See Customs' Covered Merchandise Referral Request for Merchandise Under EAPA Consolidated Case Number 7335 (Remand Number 7717), Imported by Norca Industrial Company, LLC and International Piping & Procurement Group, LP: Antidumping Duty Order on Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China ("Covered Merchandise Referral Request") (Sept. 6, 2022), PR 7.  In the Covered Merchandise Referral Request, Customs described the production of carbon steel butt-weld pipe fittings by Norca Industrial Company, LLC ("Norca") and International Piping & Procurement Group, LP ("IPPG") as involving three stages of production:

1.   Converting seamless pipe into the rough shape of an elbow, tee, reducer, etc., through a cold- or hot-forming (or forging) process;

2.   Reforming or sizing the rough fitting so that the fitting will match the pipe it is destined to be welded to; and

Consol. Court No. 23-00231                                          Page 5

3.    Undergoing finishing processes such as shot blasting or other cleaning, machine beveling, boring and tapering, grinding, die stamping, inspection, and painting.

Covered Merchandise Referral Request at 3–4.

Norca claimed that its merchandise exported by BW Fittings into the United States underwent at least the second and third stages of production in Vietnam, and that the rough fittings imported by BW Fittings from China were not "unfinished" carbon steel butt-weld pipe fittings covered by the Order. Id. at 4. Customs requested that Commerce determine whether Norca's and IPPG's "Chinese-origin rough fittings" purchased from BW Fittings were covered by the Order in two scenarios: (1) Chinese-origin rough fittings that only underwent the third stage of production (*i.e.,* finishing processes) in Vietnam and (2) Chinese-origin rough fittings that underwent both the second and third stages of production in Vietnam. Id.

Commerce defined the subject merchandise at issue as "rough and unfinished fittings originating in China and processed into butt-weld pipe fittings through two production scenarios in Vietnam," with the first production scenario involving "Chinese-origin unfinished butt-weld pipe fittings [that underwent] the final stage (*i.e.*, finishing processes) of three production stages in Vietnam" and the second production scenario involving "Chinese-origin rough butt-weld pipe fittings [that underwent] the second and third stages of production in Vietnam." Final

Consol. Court No. 23-00231                                                                                    Page 6

IDM at 3.  Commerce determined initially that rough fittings originating from

China that underwent the second and third stages of production in Vietnam were

not subject to the scope of the Order.  Final Determination.  Additionally,

Commerce determined that unfinished fittings from China that underwent the third

stage of production in Vietnam were subject to the scope of the Order.  Id.

In Tube Forgings I, this Court remanded the Final Determination, holding

that Commerce's determination that "rough fittings" that underwent the second and

third stages of production in Vietnam were not subject to the scope of the Order

was not supported by substantial evidence.  See 49 CIT at __, 750 F. Supp. 3d at

1383.  This Court stated that at the heart of this case was the distinction between

"rough," "unfinished," and "finished" fittings, and concluded that Commerce

arbitrarily deviated from its long-standing practice of considering products in the

"rough shape of an elbow, tee, or reducer, which were not heated or formed," to be

butt-weld pipe fittings that fell within the scope of the Order.  Id., 49 CIT at __, __,

750 F. Supp. 3d at 1373, 1383.

Commerce issued its Final Results of Redetermination Pursuant to Court

Remand ("Remand Redetermination") and continued to determine that

"merchandise that [underwent] the first stage of production in China and then

[underwent] the second and third stages of production in Vietnam" were not

subject to the scope of the Order.  Remand Redetermination at 39, ECF No. 56-1.

This Court concluded that Commerce's Remand Redetermination was not supported by substantial evidence and directed Commerce to further consider its determination, specifically ordering Commerce to conduct a new analysis pursuant to 19 C.F.R. § 351.225(k)(2). Tube Forgings II, 49 CIT at __, __, 813 F. Supp. 3d at 1314, 1317–18.

Commerce issued its Second Remand Redetermination that reversed its prior determinations and, pursuant to 19 C.F.R. § 351.225(k)(2), determined that products in the "rough shape of an elbow, tee, or reducer" produced in China that underwent sizing/reforming or heat- or cold-treating and finishing in Vietnam were subject to the scope of the Order. See Second Remand Redetermination at 2–3, 17, 28.

## JURISDICTION AND STANDARD OF REVIEW

The U.S. Court of International Trade has jurisdiction pursuant to Section 516A(a)(2)(B)(vi) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi), and 28 U.S.C.§ 1581(c). The Court will hold unlawful any determination unsupported by substantial evidence on the record or otherwise not in accordance with law. See 19 U.S.C. § 1516a(b)(1)(B)(i). The Court also reviews determinations made on remand for compliance with the Court's remand order. Ad Hoc Shrimp Trade Action Comm. v. United States, 38 CIT 727, 730, 992 F. Supp. 2d 1285, 1290 (2014), aff'd, 802 F.3d 1339 (Fed. Cir. 2015).

Consol. Court No. 23-00231                                                    Page 8

## DISCUSSION

The descriptions of merchandise covered by the scope of an antidumping or countervailing duty order must be written in general terms, and questions may arise as to whether a particular product is included within the scope of an order. See 19 C.F.R. § 351.225(a). When such questions arise, Commerce's regulations direct it to issue scope rulings that clarify whether the product is included within the scope. Id. Although there are no specific statutory provisions that govern Commerce's interpretation of the scope of an order, Commerce is guided by case law and agency regulations. See Meridian Prods., LLC v. United States ("Meridian Prods."), 851 F.3d 1375, 1381 (Fed. Cir. 2017); 19 C.F.R. § 351.225.

Commerce's inquiry must begin with the relevant scope language. See, e.g., OMG, Inc. v. United States, 972 F.3d 1358, 1363 (Fed. Cir. 2020). The plain meaning of the language governs when the scope language is unambiguous. Id. If the language is ambiguous, however, Commerce interprets the scope with the aid of the sources set forth in 19 C.F.R. § 351.225(k)(1). Meridian Prods., 851 F.3d at 1382. Commerce will consider the (k)(2) factors under 19 C.F.R. § 351.225(k)(2) if the (k)(1) sources do not dispositively answer the question. Id.

Commerce will consider the following interpretive sources under 19 C.F.R. § 351.225(k)(2) to determine whether merchandise are covered by the scope of an order:

    (A)    The physical characteristics (including chemical, dimensional, and technical characteristics) of the product;

    (B)    The expectations of the ultimate users;

    (C)    The ultimate use of the product;

    (D)    The channels of trade in which the product is sold; and

    (E)    The manner in which the product is advertised and displayed.

19 C.F.R. § 351.255(k)(2)(i). If there is a conflict between the factors of Section 351.255(k)(2), "paragraph (k)(2)(i)(A) will normally be allotted greater weight than other factors." Id. at § 351.255(k)(2)(ii).

The scope language of the Order in this case states in relevant part:

> The products covered by this order are carbon steel butt-weld pipe fittings, having an inside diameter of less than 14 inches, imported in either finished or unfinished form. These formed or forged pipe fittings are used to join sections in piping systems where conditions require permanent, welded connections, as distinguished from fittings based on other fastening methods (e.g., threaded, grooved, or bolted fittings). Carbon steel butt-weld pipe fittings are currently classified under subheading 7307.93.30 of the Harmonized Tariff Schedule (HTS). Although the HTS subheading is provided for convenience and customs purposes, our written description of the scope of this proceeding is dispositive.

Order, 57 Fed. Reg. at 29,702.

In Tube Forgings II, the Court remanded for Commerce to consider the criteria set forth in 19 C.F.R. § 351.225(k)(2) because the (k)(1) sources did not dispositively support Commerce's determination with substantial evidence and

Consol. Court No. 23-00231                                                    Page 10

because the (k)(1) review was not in accordance with law.  49 CIT at __, 813 F.

Supp. 3d at 1309–1310.

In the Second Remand Redetermination, Commerce reversed its prior

determinations by analyzing the criteria in 19 C.F.R. § 351.225(k)(2) and

determining that products in the "rough shape of an elbow, tee, or reducer"

produced in China that underwent sizing/reforming or heat- or cold-treating and

finishing in Vietnam were subject to the scope of the Order.  See Second Remand

Redetermination at 2–3.

As to the first criterion under 19 C.F.R. § 351.225(k)(2), Commerce

determined that the "physical characteristics of the product" supported the

determination that products in the "rough shape of an elbow, tee, or reducer"

produced in China that underwent sizing/reforming or heat- or cold-treating and

finishing in Vietnam were subject to the scope of the Order.  See Second Remand

Redetermination at 9, 11.  In its Second Remand Redetermination, Commerce

stated that "the physical characteristics, such as the general shape, size, and inside

and outside diameters, of the merchandise [were] imparted" during the production

process in China.[2]  See id. at 11.  Commerce determined that the merchandise that

---

[2] Commerce noted that "the parties are in agreement that the specific final shape, size, and diameter are achieved through the coining operation . . . to 'achieve true circularity and precise outside diameter.'"  Second Remand Redetermination at 11 n.31 (citing Letter from Mayer Brown LLP to U.S. Department of Commerce,

resulted from pipe being cut to length and formed into the rough shape of elbows, tees, and reducers in China shared the same general physical characteristics as an unfinished or finished carbon steel butt-weld pipe fitting.  Id.  Commerce determined that record evidence showed that certain generally-accepted industry standards for carbon steel butt-weld pipe fittings were met after pipe was cut to length and formed into the rough shape of elbows, tees, and reducers in China, as noted in the declarations from the U.S. industry, "which state that butt-weld pipe fittings were 'manufactured to specific industry standards: ASTM A234 for material and ANSI B16.9 for dimensions.'"  Id. (quoting Letter from Neville Peterson LLP to U.S. Department of Commerce, Petitioners' Reply to the Department's Questionnaire (Feb. 28, 2023) ("Petitioner's Reply Questionnaire") at Ex. 3 ("Bruce Rust Declaration"), PR 51) (citing Weldbend's Comments (k)(2) Criteria at Ex. 1).  Commerce noted that the industry declarations stated that "[t]hese industry standards are frequently specified in purchase orders for rough fittings, further confirming the industry's view that a rough is an unfinished [carbon steel butt-weld pipe fitting]."  Id. at 11 n.34 (citing Bruce Rust Declaration; Weldbend's Comments (k)(2) Criteria at Exs. 1–3).  Based upon Commerce's explanation and the record evidence cited, the Court concludes that

---

Weldbend Comments Addressing (k)(2) Criteria (Jan. 21, 2026) ("Weldbend's Comments (k)(2) Criteria") at Exs. 1–3, SRPR 10).

Commerce's determination that the "physical characteristics of the product" supports the determination that products in the "rough shape of an elbow, tee, or reducer" produced in China that underwent sizing/reforming or heat- or cold-treating and finishing in Vietnam were subject to the scope of the Order is supported by substantial evidence.

Under the second criterion of 19 C.F.R. § 351.225(k)(2), Commerce determined that the "expectations of the ultimate users" of pipe cut to length and formed into the rough shape of elbows, tees, and reducers and unfinished carbon steel butt-weld pipe fittings were the same. See Second Remand Redetermination at 13. Commerce stated that there was no evidence on the record demonstrating that pipe cut to length and formed into the rough shape of elbows, tees, and reducers were sold to purchasers other than those who intended to produce finished carbon steel butt-weld pipe fittings. See id. Commerce determined that the criterion of the "expectations of the ultimate users" did "not weigh against a finding that [pipe cut to length and formed into the rough shape of elbows, tees, and reducers] in China and unfinished and finished [carbon steel butt-weld pipe] fittings produced in Vietnam [were] covered by the scope of the Order." Id.

Analyzing the third criterion under 19 C.F.R. § 351.225(k)(2), Commerce determined that the "ultimate use of the product" weighed in favor of determining that merchandise that were cut to length and formed into the rough shape of

Consol. Court No. 23-00231                                               Page 13

elbows, tees, and reducers in China and then sized/reformed or heat- or cold-treated and finished in Vietnam were covered by the scope of the Order.  See Second Remand Redetermination at 14.  Commerce analyzed declarations from multiple industry officials and determined that the declarations were clear that it was "rare for [pipe cut to length and formed into the rough shape of elbows, tees, and reducers] to be used as the source material for any other type of fitting."  Id. (citing Petitioner's Reply Questionnaire at Ex. 1).  Commerce stated that the industry declarations showed that merchandise that had been cut to length and formed into the rough shape of elbows, tees, and reducers could only be converted into a finished carbon steel butt-weld pipe fitting and that other types of fittings (threaded, grooved, or bolted fittings) were manufactured in different ways to different industry standards or different dimensions.  Id. at 13 (citing Petitioners' Reply Questionnaire at Exs. 1–3; Weldbend's Comments (k)(2) Criteria at Ex. 1). Commerce stated that the evidence established that merchandise that underwent the first production process was incompatible with being converted into other fitting types.  Id. at 13–14 (citing Weldbend's Comments (k)(2) Criteria at Ex. 1). Based upon Commerce's explanation and record evidence cited, the Court concludes that Commerce's determination that the "ultimate use of the product" criterion weighed in favor of determining that merchandise that were cut to length and formed into the rough shape of elbows, tees, and reducers in China and then

sized/reformed or heat- or cold-treated and finished in Vietnam were covered by

the scope of the Order is supported by substantial evidence.

With respect to the fourth criterion under 19 C.F.R. § 351.225(k)(2), the

"channels of trade in which the product is sold," Commerce determined that record

evidence indicated that merchandise that were cut to length and formed into the

rough shape of elbows, tees, and reducers in China were sold to Vietnam for

further processing into carbon steel butt-weld pipe fittings.  Id. at 15 (citing

Covered Merchandise Referral Request).  Commerce pointed to industry

declarations, noting that second-stage fittings were sold to converters, who then

performed finishing operations.  Id. (citing Petitioner's Reply Questionnaire at Exs.

1–3).  In the absence of contradictory evidence, Commerce determined that the

fourth criterion, "channels of trade in which the product is sold," did not weigh

against a determination that merchandise that were cut to length and formed into

the rough shape of elbows, tees, and reducers were unfinished carbon steel butt-

weld pipe fittings.  Second Remand Redetermination at 15.  Based upon

Commerce's explanation and record evidence cited, the Court concludes that

Commerce's determination that the "channels of trade in which the product is

sold" criterion indicated that merchandise that were cut to length and formed into

the rough shape of elbows, tees, and reducers in China were sold to Vietnam for

Consol. Court No. 23-00231                                                    Page 15

further processing into carbon steel butt-weld pipe fittings is supported by substantial evidence.

With respect to the last criterion under 19 C.F.R. § 351.225(k)(2), the "manner in which the product is advertised and displayed," Commerce stated that no party has provided information showing that either pipe cut to length and formed into the rough shape of elbows, tees, and reducers or unfinished carbon steel butt-weld pipe fittings were advertised or displayed. Second Remand Redetermination at 16. Commerce determined that it was "unable to analyze the similarity (or lack thereof)" of pipe cut to length and formed into the rough shape of elbows, tees, and reducers and in-scope merchandise with respect to this criterion. Id.

Based on Commerce's analysis pursuant to 19 C.F.R. § 351.225(k)(2), Commerce determined that merchandise that were cut to length and formed into the rough shape of elbows, tees, and reducers in China and then sized/reformed or heat- or cold-treated and finished in Vietnam were considered to be carbon steel butt-weld fittings "in unfinished form" within the language of the scope Order. Id. at 16–17. Accordingly, based on Commerce's reopening of the record to review evidence pursuant to the criteria in 19 C.F.R. § 351.225(k)(2), the Court holds that Commerce's determination on second remand is in accordance with law and is supported by substantial evidence.

Consol. Court No. 23-00231                                              Page 16

## CONCLUSION

The Court concludes that Commerce's <u>Second Remand Redetermination</u> determining that merchandise that were cut to length and formed into the rough shape of elbows, tees, and reducers in China and then sized/reformed or heat- or cold-treated and finished (the second and third stages of production) in Vietnam were covered by the scope of the <u>Order</u> is supported by substantial evidence and in accordance with law.  The Court sustains the <u>Second Remand Redetermination</u>. Additionally, the Court sustains Commerce's prior conclusion in the <u>Final Determination</u> that unfinished fittings from China that underwent the third stage of production in Vietnam were subject to the scope of the <u>Order</u>.

Judgment will be entered accordingly.


                                                      /s/ Jennifer Choe-Groves
                                                     Jennifer Choe-Groves, Judge

Dated:          July 29, 2026
        New York, New York